O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| TRACEY RAMIREZ | § | |
| | § | |
| Petitioner | § | |
| VS. | § | CIVIL ACTION NO. 5:10-cv-80 |
| | § | CRIMINAL ACTION NO. 5:09-cr-1896-1 |
| UNITED STATES OF AMERICA | § | |

**ORDER DISMISSING TRACEY RAMIREZ' MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE
BY A PERSON IN FEDERAL CUSTODY**

Pending before the Court is Tracey Ramirez' ("Ramirez") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.[1] Upon review of the motion, record, and controlling authorities, Ramirez' motion is **DISMISSED with prejudice**. Accordingly, Ramirez' "Motion to Proceed *In Forma Pauperis*"[2] is **DENIED as moot.**

## I. BACKGROUND

On August 18, 2009, a federal grand jury in Laredo, Texas, charged Ramirez with importation, possession, and conspiracy to possess a controlled substance in a three-count indictment.[3] On October 6, 2009, Ramirez pleaded guilty to Count Two.[4] Count Two specifically charged that,

> [Ramirez] did knowingly and intentionally possess with intent to distribute a controlled substance. This offense involves a quantity in excess of 50 grams of methamphetamine, a Schedule II controlled substance. In violation of Title 21,

---

[1] Dkt. No. 1 ("Dkt. No." refers to the docket number entry for the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing. "Dkt. No." will be used to refer to filings in civil case number 5:10-cv-80. "Cr. Dkt. No." will be used to refer to filings in criminal case number 5:09-cr-1896-1. ).
[2] Dkt. No. 2.
[3] Cr. Dkt. No. 11.
[4] Minute Entry 10/06/2009.

1 / 11

> United States Code, Sections 841(a)(1) and 841(b)(1)(A) and Title 18, United States Code, Section 2.[5]

As part of her plea agreement with the government, Ramirez waived her right to appeal or collaterally attack her sentence. Specifically the plea agreement states,

> Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.[6]

On January 5, 2010, the Court sentenced Ramirez to one hundred and eight months in custody and three years of supervised release.[7] The Court entered judgment on January 13, 2010.[8] On July 12, 2010, Ramirez filed this motion under 28 U.S.C. § 2255.[9] All her claims relate to allegation that she received ineffective assistance of counsel.[10]

## II. DISCUSSION

### A. Standard for Relief under 28 U.S.C. § 2255

"Relief under 28 U.S.C.A. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."[11] Generally, § 2255 claims fall under four categories: (1) challenges to the constitutionality or legality of a sentence; (2) challenges to the district court's jurisdiction to impose the sentence; (3) challenges to the length of a sentence in excess of the statutory maximum; and (4) claims that the sentence is otherwise subject to collateral attack.[12] After conducting an initial examination of the petition, the Court must

---

[5] Cr. Dkt. No. 11.
[6] Cr. Dkt. No. 18.
[7] Minute Entry 1/5/2010 & Cr. Dkt. No. 31.
[8] Cr. Dkt. No. 31.
[9] Dkt. No. 1.
[10] *Id.* at p. 5.
[11] *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).
[12] *See* 28 U.S.C. § 2255 (2006); *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995).

dismiss if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."[13]

###  B. Plea and Waiver of Right to Appeal and Right to Mount Collateral Attacks

It is well-established that a defendant may waive the right to appeal and collaterally attack a conviction and sentence, so long as the waiver is both knowing and voluntary, and the waiver applies to the circumstances at hand.[14] A court must first determine whether the waiver was knowing and voluntary, and then evaluate whether the waiver "applies to the circumstances at hand, based upon the plain language of the agreement."[15] A district court may examine the validity of a waiver when a defendant files a motion to collaterally attack her conviction or sentence.[16]

When determining whether a defendant's waiver is knowing and voluntary, the Court is mindful of the Fifth Circuit's position that Rule 11 admonishments provide "prophylactic protection for the constitutional rights involved in the entry of guilty pleas."[17] Moreover, the requirement that a waiver be knowing and voluntary does not require a court to ensure that the defendant's knowledge of the consequences is perfect.[18] "[T]he Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor."[19]

The Court pays careful attention to the previous proceedings and declarations by Ramirez. "For the representations of the defendant, his lawyer, and the prosecutor at such a

---

[13] 28 U.S.C. § 2255, PROC. R. 4(b).
[14] *United States v. Sanchez Guerrero*, 546 F.3d 328, 335 (5th Cir. 2008) (citing *United States v. Palmer*, 456 F.3d 484, 488 (5th Cir.2006)); *see also United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005).
[15] *Bond*, 414 F.3d at 544.
[16] *See United States v. Boyd*, No. 3:06-cv-1365-H, 2007 WL 900949, at *3 (N.D. Tex. Mar. 23, 2007);
[17] *United States v. Gracia*, 983 F.2d 625, 627 (5th Cir. 1993).
[18] *Boyd*, 2007 WL 900949, at *4 (citing *United States v. Ruiz*, 536 U.S. 622, 631 (2002).
[19] *United States v. Ruiz*, 536 U.S. 622, 623, (2002).

hearing, as well as any findings made by the judge accepting the plea, constitute a *formidable barrier* in any subsequent collateral proceedings. *Solemn declarations in open court carry a strong presumption of verity.*"[20]

In limited circumstances, a defendant may plead around a waiver and claim ineffective assistance of counsel if she alleges that the plea or waiver were tainted by counsel's ineffective assistance.[21] The Court emphasizes that this is a *narrow exception*; "an ineffective assistance of counsel argument survives a waiver of appeal *only* when the claimed ineffective assistance *directly affected the validity of that waiver or the plea itself.*"[22]

### C. Whether Ramirez' Waiver Was Knowing and Voluntary

The Court reviewed the record to determine whether Ramirez' plea and waiver of her right to collaterally attack her conviction or sentence were knowing and voluntary. Because Ramirez' attorney changed between the time when she pleaded guilty and was sentenced, the Court will explain her case in stages.

#### 1. Plea Agreement

As discussed above, Ramirez entered into a written plea agreement with the government.[23] Once again, the Court highlights paragraph seven of the plea agreement where Ramirez agreed to waive her right to appeal or collaterally attack her conviction or sentence.[24] Ramirez signed this agreement on October 6, 2009.[25]

#### 2. Addendum to Plea Agreement

---

[20] *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (emphasis added.).
[21] *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002).
[22] *Id.* (emphasis added).
[23] Cr. Dkt. No. 18.
[24] *Id.* at ¶ 7.
[25] *Id.* at ¶ 20.

In addition to her plea agreement, Ramirez signed a written addendum to that plea agreement. The addendum states in relevant part

> I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.[26]

Ramirez' written statement in the addendum was further corroborated by her oral statements at the rearraignment.

### 3.   Rearraignment

At the rearraignment, the Court placed Ramirez under oath.[27] Consistent with the requirements of Federal Rule of Criminal Procedure 11,[28] the Court advised Ramirez of her rights, the charges against her, and the consequences of pleading guilty.

Ramirez stated she had enough time to discuss her case with her attorney and was satisfied with his legal representation.[29] The Court explained the charge against Ramirez, and Ramirez affirmed that she understood.[30] Ramirez said that she had signed her plea agreement[31] and that she had enough time to go through the plea agreement *in detail* with her attorney.[32] Ramirez agreed that she had given up her rights to appeal or attack her conviction or sentence.[33] Ramirez acknowledged that she had given up those rights and would plead guilty to Count Two in order to obtain various concessions from the government.[34]

---

[26] Cr. Dkt. No. 19.
[27] Digital Recording of October 6, 2009, Rearraignment at 1:10 p.m.
[28] *See* FED. R. CRIM. P. 11(b).
[29] Digital Recording of October 6, 2009, Rearraignment at 1:12 p.m.
[30] *Id.* at 1:13 p.m.
[31] *Id.* at 1:16 a.m.
[32] *Id.*
[33] *Id.*
[34] *Id.*

The Court asked Ramirez if anyone had promised her anything else in order to get her to plead guilty, and Ramirez asked about a four level reduction.[35] In response to her question, the Court explained that the government would not oppose a two level reduction if she accepted responsibility as contemplated by the guidelines, that the government would ask the court for an additional one-level reduction if her offense level was sixteen or higher, and that the government would recommend an additional level of reduction for Ramirez waiving her rights to appeal or file post-conviction motions.[36] Furthermore, the Court pointed out that there was nuance to the government's agreement.[37] Ramirez then said she understood.[38] Once again the Court asked Ramirez if anyone had promised her anything else to get her to plead guilty, and Ramirez responded "No."[39]

Ramirez said she understood that the government's recommendations were not binding on the district judge.[40] She also acknowledged that she was giving up her rights to appeal or collaterally attack her conviction or sentence.[41] Ramirez said that no one had forced her or threatened her to get her to plead guilty.[42] Ramirez acknowledged that she was pleading guilty freely and voluntarily—that is—it was her decision to do so.[43] The Court explained the maximum penalties in her case if she pleaded guilty and Ramirez said she understood.[44]

The Court then told Ramirez about the sentencing guidelines and warned her that if her attorney had talked to her about a calculation, score, or range of confinement, it was a "best guess or estimate of how [her] case would be calculated—it [was] not a guarantee;" and Ramirez

---

[35] *Id.* at 1:18 p.m.
[36] *Id.*
[37] *Id.* at 1:19 p.m.
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.* at 1:20 p.m.
[42] *Id.* at 1:28 p.m.
[43] *Id.* at 1:29 p.m.
[44] *Id.* at 1:29 p.m. & 1:35 p.m.

said she understood.[45]  Furthermore, the Court warned Ramirez that if she did not like or disagreed with her sentence or thought it was unfair for any reason, she could not withdraw her guilty plea or appeal her case or file any motions to complain about her sentence.[46]  The Court explained Ramirez' right to a trial and related rights, and Ramirez said she understood her rights and was willing to give up those rights and go forward with a guilty plea.[47]  Ramirez affirmed that she understood everything the Court had explained to her and stated that she did not have any questions.[48]

Ramirez pleaded guilty.[49]  The government's attorney read the factual basis.[50]  Ramirez' attorney said there was a minor factual discrepancy in the government's factual basis, but Ramirez did not dispute the elements of the offense.[51]  Upon further questioning by the Court, Ramirez said she knew she was carrying drugs but she did not know the type.[52]  Ramirez' attorney also explained that there was a potential duress defense, but it was not a complete defense and that Ramirez had decided not to pursue it at that phase in the case.[53]  Ramirez stated that she talked with her attorney about this potential defense and she still wanted to plead guilty.[54]  The Court then accepted her plea.[55]

### 4. Ramirez Receives A New Attorney

On October 21, 2009, Ramirez' attorney motioned to withdraw because of a perceived conflict with another client represented by a separate attorney within the public defender's

---

[45] *Id.* at 1:35 p.m.
[46] *Id.* at 1:39 p.m.
[47] *Id.* at 1:40 p.m.
[48] *Id.* at 1:42 p.m.
[49] *Id.* at 1:44 p.m.
[50] *Id.*
[51] *Id.* at 1:45 p.m.
[52] *Id.* at 1:46 p.m.
[53] *Id.* at 1:47 p.m.
[54] *Id.* at 1:48 p.m.
[55] *Id.* at 1:49 p.m.

office.[56] On October 22, 2009, the Court granted the motion to withdraw,[57] and another attorney was appointed to Ramirez' case.[58] On October 26, 2009, the Court set the case for a status conference.[59]

### 5. Status Conferences

At the November 3, 2009, status conference the Court discussed the change in Ramirez' representation and focused specifically on the possibility that the Court might allow Ramirez to withdraw her guilty plea after she received a second opinion from her new attorney.[60] Ramirez said she understood.[61] The Court then set a second status conference for the following week.[62]

At the second status conference on November 10, 2009, Ramirez' attorney advised the Court that she did not want to withdraw her guilty plea.[63] The Court placed Ramirez under oath.[64] Ramirez confirmed that she had reviewed her case with her new attorney and that she did not want to withdraw her guilty plea.[65] Ramirez said she did not have any questions for the Court.[66] The Court remanded Ramirez into custody.[67]

Based on the above review of the record, it appears that Ramirez' plea agreement and waiver were knowing and voluntary. Additionally, based on the plain language of the plea agreement, the Court finds that Ramirez waived her right to collaterally attack her sentence in a 28 U.S.C. § 2255 petition.

---

[56] Cr. Dkt. No. 22.
[57] Cr. Dkt. No. 23.
[58] Cr. Dkt. No. 24.
[59] Cr. Dkt. No. 25.
[60] Digital Recording of November 3, 2009, Status Conference at 10:23 a.m & 10:25 a.m.
[61] *Id.* at 10:24 a.m.
[62] *Id.* at 10:25 a.m.
[63] Digital Recording of November 10, 2009, Status Conference at 2:44 p.m.
[64] *Id.* at 2:45 p.m.
[65] *Id.*
[66] *Id.* at 2:46 p.m.
[67] *Id.* 6

### D.   Ineffective Assistance of Counsel

Ramirez bases her § 2255 petition on ineffective assistance of counsel. Ineffective assistance of counsel is a violation of the Sixth Amendment right to counsel, a constitutional claim permitted under 28 U.S.C. § 2255. Under the pertinent two-prong test, Ramirez must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that Ramirez suffered prejudice as a result.[68] In assessing whether counsel was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance."[69]

Since Ramirez waived her right to file a § 2255 petition in her plea agreement, the Court must first determine whether that waiver prevents the Court from reaching the merits of her § 2255 claim. As explained above, in limited circumstances, a Petitioner may plead around her § 2255 waiver with a claim of ineffective assistance of counsel pertaining to the plea or waiver. Ramirez' claims of ineffective assistance of counsel pertain to two distinct portions of her proceedings.

### 1.   Ineffective Assistance of Counsel as Related to Ramirez' Plea and Waiver

Although it appears to the Court that Ramirez' claims deal with ineffective assistance of counsel at sentencing, the Court construes Ramirez' *pro se* complaint liberally and will consider whether she suffered ineffective assistance of counsel that undermines the validity of her plea or waiver.[70] Ramirez' only claim that is potentially related to the validity of her plea is the fact that she was represented by an attorney who subsequently withdrew due to a potential conflict of

---

[68] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
[69] *Id.* at 689.
[70] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

interest.[71] At her rearraignment, Ramirez told the Court that she was satisfied with her representation. It is conceivable, however, that she was satisfied because she was unaware of the potential conflict of interest. That is why the Court specifically highlighted the possibility of withdrawing the plea to Ramirez, gave her an additional week to review her case with her new attorney, and inquired a week later whether she wanted to withdraw her plea after she had reviewed her case with the new attorney. The entirety of the record demonstrates that Ramirez made a knowing and voluntary decision to maintain her guilty plea after she received a second opinion from her new attorney. Furthermore, even if Ramirez was able to show that her counsel acted unreasonably when she entered her plea, she cannot show prejudice on these facts because she ratified her earlier plea agreement after the Court took extensive steps to protect her rights and ensure that she was making an informed decision. Finally, Ramirez does not set forth any facts concerning the plea.

### 2. Ineffective Assistance of Counsel as Related to Ramirez' Sentencing

The remaining claims of ineffective assistance of counsel in Ramirez' petition relate to her counsel's assistance in the sentencing process. Ramirez waived her right to attack her sentence, and these claims do not undermine the validity of Ramirez' plea or waiver. Therefore, the Court cannot reach the merits of her ineffective assistance of counsel claims because they fall squarely within the scope of the waiver, and no exceptions apply.

The Fifth Circuit recognized the gravity of waivers in *United States v. Baty* when it stated,

> When a defendant waives her right to appeal, she gives up the very valuable right to correct a district court's unknown and unannounced sentence. After waiving her right to appeal, the district court could err in its application of the Sentencing Guidelines or otherwise impose an illegal sentence. Indeed, the defendant may

---

[71] Dkt. No. 1 at 5.

10 / 11

find herself serving unnecessary jail time. Yet, the defendant, who has waived her right to appeal, cannot appeal these errors.[72]

This explains why the Court went to such great lengths in Ramirez' case to ensure that her waiver was knowing and voluntary. Ramirez knowingly and voluntarily waived her rights to appeal and collaterally attack her sentence. She received the benefit of her bargain through the government's concessions in the plea agreement. She may not now escape the consequences of that valid waiver simply because she is dissatisfied with her sentence.

### III. CONCLUSION

The Court has reviewed the motion, record, and controlling authorities. Because all the claims advanced in Ramirez' 28 U.S.C. § 2255 motion fall squarely within the scope of a voluntary waiver, Ramirez' motion is **DISMISSED with prejudice.** Accordingly, Ramirez' "Motion to Proceed *In Forma Pauperis*" is **DENIED as moot.** Should Ramirez seek a certificate of appealability, the same is **DENIED**.

IT IS SO ORDERED

DONE this 17th day of November, 2010, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

---

[72] *United States v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992).